ANTONIO MARTORELL, demandante y apelado, v. "ANDINO & FEBRES" SOCIEDAD INDUSTRIAL DE CONSTRUCCIÓN, demandada, y ANTONIO ANDINO, tercerista y apelante.

No. 4326.—*Visto:* Noviembre 28, 1927. *Resuelto:* Mayo 8, 1928.

*Carmelo Honoré,* abogado del tercerista apelante; *Adrián Agosto,* abogado del apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

En este caso la parte apelada solicitó la desestimación del recurso. Se opuso la apelante, y la corte declaró haber lugar a la desestimación. Las razones que tuvo el tribunal se expusieron en una opinión emitida por el Juez Presidente que suscribe que dice así:

"Antonio Martorell entabló demanda contra la sociedad 'Andino & Febres' en cobro de dinero y embargó cierta suma depositada a favor de la demandada en el American Colonial Bank. Antonio Andino, socio de 'Andino & Febres,' inició entonces este procedimiento de tercería, alegando ser individualmente el dueño de la suma embargada. Celebrado el juicio, la Corte de Distrito dictó sentencia en contra del tercerista, el 26 de mayo de 1927. Andino apeló para ante esta Corte Suprema el 14 de junio de 1927.

"Así las cosas, Antonio Martorell, la parte victoriosa en el procedimiento de tercería, presentó a esta Corte una moción solicitando la desestimación del recurso, 1º porque la apelación se interpuso fuera del tiempo marcado por la ley; 2º porque la notificación que se le hizo del escrito de apelación no lo fué en forma debida y, 3º porque dejó de notificarse la apelación a una parte interesada, 'Andino & Febres.'

"Exponiendo el primer fundamento de su moción, sostiene Martorell que habiéndose dictado la sentencia el 26 de mayo, siendo el término para apelar el de diez días a partir de dictada la sentencia y habiéndose archivado el escrito de apelación el 14 de junio, la conclusión de que el recurso se estableció fuera de tiempo es evidente.

"La sección 19 de la ley para proveer el procedimiento en casos de tercería, Comp. 1911, pág. 891, prescribe que: 'Contra las sentencias dictadas en los juicios de tercería podrá apelarse en el término de diez días, y en la forma dispuesta por el Código de Enjuiciamiento Civil, para las apelaciones en general.'

"En el caso de *International Express and Foundry Co.* vs. *Allen et al.,* 32 D.P.R. 847, 850, esta corte dijo:

" 'En estas circunstancias la apelación debió haber sido interpuesta dentro de diez días a partir de la notificación de la sentencia, y como la apelación no fué de tal modo interpuesta debe ser desestimada.'

"Martorell insiste en que una revisión de los autos del caso citado demuestra que la cuestión que él ahora suscita no fué allí levantada. Eso es cierto y también lo es que esta corte llegó a la conclusión de que el término se contaba no a partir del registro de la sentencia, sino de la notificación de la misma, sin razonarla. Pero sometida ahora la conclusión a la crítica del apelado y al examen nuestro, estimamos que se ajusta a la ley porque dados los términos en que está redactada la sección diez y nueve, debe aplicarse lo prescrito en el Código de Enjuiciamiento Civil íntegramente y éste dispone que el término para apelar se cuenta a partir del archivo de la notificación con los autos.

"El precedente establecido por esta corte al interpretar la ley especial de desahucio (véase los casos de *Figueroa et al.* vs. *Sepúlveda*, 24 D.P.R. 690, 694; *Ramírez* vs. *Pérez*, 25 D.P.R. 231, 234; y *Barbosa et al.* vs. *Fernández*, 28 D.P.R. 305) no es aplicable. La ley de desahucio de modo terminante ordena en su sección 11 que: 'Las apelaciones *deberán* interponerse en el término de cinco días *contados desde la fecha de la sentencia*,' y es luego en la sección 14 que expresa: 'Las apelaciones se tramitarán de acuerdo con el Código de Enjuiciamiento Civil . . . .'

"Basta comparar la redacción de la sección 19 de la ley de tercerías con la de las secciones 11 y 14 de la de desahucio, para concluir que son diferentes en su alcance. La 19 de la ley de tercerías no fija el punto de partida y se refiere en seguida al Código de Enjuiciamiento Civil. La 11 de la de desahucio de modo terminante fija dicho punto y es en otra sección de la ley que se hace referencia en general al Código de Enjuiciamiento Civil, aplicable para la tramitación del recurso una vez que éste ha sido debidamente interpuesto no sólo de acuerdo con la sección 11, sino con la 12 de la misma ley.

"Sostiene el apelado que aunque no prevaleciera su criterio, siempre resultaría que la apelación se interpuso fuera de tiempo porque consta de los autos que la sentencia se notificó al día siguiente de dictada o sea el 28 de mayo de 1927.

"En efecto de los autos aparece una copia exacta de la notificación de la sentencia al abogado de la parte apelante con una nota al pie que dice: 'Nota de Archivo: En mayo 28, 1927 se archiva

en autos esta copia y se remite el original al Ldo. Carmelo Honoré, San Juan, P. R. (Fdo.) Luis Vergne Ortiz, Secretario.'

"La sección 2 de la Ley para enmendar los artículos 92, 123, 227 y 299 del Código de Enjuiciamiento Civil, aprobada en 9 de marzo de 1911, Comp. 1911, pág. 902, dice:

"'En todos los casos en que se pueda establecer el recurso de apelación, según lo provisto en la sección 295 del Código de Enjuiciamiento Civil, según fué enmendada en marzo 11 de 1908, será deber del secretario de la corte, enviar a la parte perjudicada, o a su abogado, al dictarse la sentencia, de la cual pueda establecerse el recurso de apelación, una notificación escrita informándole que la sentencia ha sido dictada, o de la resolución de la corte, y una copia de esa notificación será archivada con los autos, y el término para establecer el recurso de apelación, empezará a correr desde la fecha del archivo de dicha notificación con los autos.'

"*Prima facie*, pues, los autos y la ley dan por entero la razón al apelado. Pero el apelante alega, que si bien ello es así, sucedió que el pliego conteniendo la notificación le fué entregado a Antonio Linares, mensajero del Departamento de Agricultura y Trabajo de que forma parte el abogado Honoré, y el dicho Linares lo guardó en su bolsillo y olvidó entregárselo hasta el 9 de junio de 1927, y sostiene además que el dicho abogado Honoré no se enteró hasta esa fecha de que se había dictado la sentencia. Para probar esos hechos se presentaron affidavits de Honoré y Linares.

"Con anterioridad a la enmienda de 1911 no había necesidad de notificar las sentencias. Bastaba registrarlas en los libros de la corte para que se entendieran notificadas. El sistema fué cambiado. Se ordenó la notificación, pero el término no se fijó a partir de la notificación, sino del archivo de la copia de la notificación con los autos. Claro está que la idea de la ley es enterar de modo directo a la parte interesada del pronunciamiento de la sentencia, pero tratándose como se trata de un documento registrado en un libro que tiene el carácter de público y de abogados que ejercen ante las cortes, y previendo el legislador las dificultades que pudieran surgir en la práctica, no quiso ir demasiado lejos en su innovación y fijó como base para la computación del término el del archivo de la copia.

"El archivo de la copia presupone que la notificación se hizo, o mejor dicho, fué enviada, para usar las palabras exactas de la ley. Además el secretario hizo constar, expresamente en su nota la remisión del original. La presunción puede destruirse mediante prueba. ¿Se destruyó aquí? Nada dispone la sección dos que transcribi-

mos con respecto a la forma del envío de la notificación. Aplicando los preceptos generales que contiene el artículo 320 del Código de Enjuiciamiento Civil, si se examina el propio affidavit de Linares, se verá que la notificación se hizo de acuerdo con dichos preceptos.

"La oficina en que trabaja Honoré durante las horas regulares del día, es el Departamento del Trabajo. Linares es el mensajero oficial de todos los negociados de dicho departamento y actúa a veces, aunque pocas, según dice, como portero. Cuando llegó el mensajero de la corte con el pliego para Honoré conteniendo la notificación, Honoré estaba ausente, y el mensajero, que actuó como portero entonces, lo recibió para él. Y así todo lo que tenía que hacer el Secretario quedó hecho.

" 'Los preceptos legales atinentes a la jurisdicción de las cortes como son los relativos al término para interponer recursos de apelación, son de aplicación estricta y no están sujetos a la discreción judicial,' como se dijo por esta Corte en *Pérez* vs. *Sucesión Collado,* 19 D.P.R. 422. Pero aún cuando estimáramos que teníamos discreción para dispensar al apelante de su falta de actuación por la conducta del empleado, las circunstancias que concurren no presentan un caso propio para el ejercicio de esa discreción. No obstante reconocer el apelante que el 9 de junio tuvo conocimiento personal de la sentencia, no fué hasta el 14 que archivó su escrito de apelación. *Otras circunstancias existen además.*

"Habiendo llegado a la conclusión de que el recurso se estableció después de vencido el término de ley, no es necesario estudiar los otros dos fundamentos en que la moción se basa, aunque deseamos decir que nos inclinamos a creer que también en virtud de ellos procedería la desestimación.

"Debe desestimarse el recurso."

No conforme la parte apelante solicitó que el tribunal reconsiderara su resolución. Uno de los jueces no había intervenido y pareciendo la cuestión digna de un mayor estudio, se reconsideró la resolución y las partes fueron otra vez oídas.

El nuevo examen que hemos hecho de los autos nos lleva a la misma conclusión. La opinión emitida se sostiene excepto en cuanto hace referencia al art. 320 del Código de Enjuiciamiento Civil, aclarándose además que el Juez Asociado Sr. Wolf cree innecesario referirse a la entrega del

sobre al mensajero del Departamento del Trabajo, por estimar que lo único que tiene que acreditarse es el archivo de la notificación con los autos y el envío de la notificación a la parte o a su abogado si el envío fuese negado. Si fuera necesario acreditar la entrega, dicho juez tiene grandes dudas de que la hecha al mensajero fuera suficiente.

La ley que estableció la nueva práctica no habla de notificaciones hechas directamente a la persona del abogado o de la parte con las formalidades de un emplazamiento, sino de "enviar a la parte perjudicada, o a su abogado, . . . . una notificación escrita informándole que la sentencia ha sido dictada." No fija la forma del envío y siendo ello así la práctica corriente de enviarla por mensajero y entregar el sobre que la contenga al mensajero o portero de la oficina en que trabaje regularmente el abogado, no es una práctica ilegal. Hubiera podido remitirse por correo. ¿Qué otra cosa puede esperarse que hubiera hecho el cartero que la que hizo el mensajero de la corte de distrito?

■ No se niega que la notificación fuera enviada, ni recibida. Se acepta que fué enviada y recibida, en la fecha que muestran los autos, pero se sostiene que la recibió el mensajero de la oficina y por un olvido involuntario no la entregó al abogado a su debido tiempo.

El abogado ni su cliente pueden quejarse. Corrieron el riesgo a que se expusieron por tratar el primero de ejercer la profesión de abogado al par que un cargo público.

■ Pero hay más. Insinuamos en nuestra anterior opinión que también procedería la desestimación por los otros motivos alegados y estudiándolos de nuevo encontramos que si bien sería dudoso que procediera la desestimación del recurso por falta de debida notificación del escrito de apelación a Martorell, es evidente que procede por no haberse notificado a una de las partes interesadas en el pleito.

Dice la moción de desestimación:

"Del récord de este caso no aparece que la apelación fuera notificada a la demandada 'Andino & Febres'.

"En este caso, una de las demandadas y apelada es la social 'Andino & Febres', ella puede ser afectada por cualquiera modificación o revocación que de la sentencia de este caso se haga por virtud de esta apelación.

"Esto es tan verdad que el Juez en su sentencia de este caso dice lo siguiente:

" 'Que los $509.69 embargados y que dan origen a esta tercería pertenecen al fondo social de la sociedad civil "Andino & Febres".' (Véase pág. 5 del récord.)

"Si lo son de la sociedad 'Andino & Febres' los $509.69 embargados en este caso, lo deben ser también los $1,445.40 por los que se libró el cheque de 20 de noviembre de 1925 y de donde se sacan estos $509.69 luego la social Andino & Febres gana o pierde con la revocación o modificación de la sentencia de este caso y debió el tercerista notificarla de la apelación que estableció en el mismo.''

En el primer alegato del tercerista Andino nada se contestó sobre el anterior motivo de desestimación. En el segundo presentado para sostener la moción de reconsideración todo lo que se dice es lo que sigue:

"En cuanto al tercer motivo o sea el hecho de no haber sido notificada la demandada 'Andino & Febres' parece suficiente la demostración por los autos, de que dicha sociedad se hallaba en rebeldía y así está demostrado por la relación del caso y opinión del Juez sentenciador. Dicha sociedad no compareció a la vista del caso ni hizo alegación alguna en oposición a las pretensiones del tercerista. No puede ser considerada parte agraviada por la sentencia apelada.

" 'No procede la desestimación por el hecho de que no se notificara el escrito interponiéndola a una parte declarada en rebeldía etc. . . . ' *Banuchi* vs. *Cabán*, 32 D.P.R. 931; *Pagán* vs. *Sellés*, 28 D.P.R. 160. *Clarke* vs. *Mork*, 125 Cal. 540–543.''

La cita del sílabo del caso de *Banuchi* v. *Cabán,* no está completa. En su totalidad dice:

"No procede la desestimación de una apelación por el hecho de que no se notificara el escrito interponiéndola a una parte declarada en rebeldía que al tiempo de verificarse el embargo de los bienes

que son objeto de la tercería los había vendido por escritura pública. Tal parte no tiene el carácter de agraviada en el litigio." *Banuchi* vs. *Cabán*, 32 D.P.R. 931.

La de *Pagán* v. *Sellés* no sostiene la contención del apelante. Es como sigue:

"No procede desestimar una apelación porque el escrito interponiéndola no fuera notificado a ciertos demandados que no consta del *record* que fueran emplazados, ni que comparecieran voluntariamente, ni que su rebeldía fuera anotada. Bajo tales circunstancias no puede sostenerse que dichos demandados quedaron sometidos a la jurisdicción de la Corte de Distrito y que son partes realmente interesadas en la apelación." *Pagán* vs. *Sellés*, 28 D.P.R. 160.

Y el caso de California invocado lo que resuelve es lo siguiente:

"Se ha radicado una moción a nombre del demandado Hinckley en la cual se solicita la desestimación de la apelación fundándose en el hecho de que el escrito de apelación no fué notificado a algunos de los demandados. Los autos no demuestran sin embargo que tales demandados fueran emplazados o que comparecieran y por consiguiente no era necesario notificarles el escrito de apelación. (Código de Enjuiciamiento Civil, art. 1014) A menos que dichos demandados fuesen traídos ante la corte superior no serían afectados por su sentencia o por la revocación de la misma por esta corte."

Siendo ello así, no habiéndose demostrado que "Andino & Febres" no fuera una parte interesada, debió notificársele el escrito de apelación y si no se le notificó como se reconoce que no se hizo, procede también por tal motivo la desestimación del recurso de acuerdo con la ley y la repetida jurisprudencia de esta misma Corte Suprema. *Melchior, Armstrong, Dessau Co.* v. *Banco*, 37 D.P.R. 789. El hecho de que dicha sociedad estuviera en rebeldía y el de que no hiciera oposición alguna a las alegaciones del tercerista, no son por sí solos bastantes para concluir que no tenía interés en el litigio.

Por virtud de todo lo expuesto, *debe desestimarse* la apelación establecida.